I'll call the case again. Do it right. 23-2102, U.S. v. Chavarria. Good morning, Your Honors, and may it please the Court, Michael Rotker from the Department of Justice on behalf of the Appellants of the United States. With the Court's permission, I'd like to reserve four minutes for rebuttal, if that's acceptable. It doesn't usually work out very well. I'm going to do my best. I'll do my best. I'll monitor the clock. Your Honors, this is a government appeal from an order of the District Court dismissing an indictment that charged the defendants with using an instrumentality of interstate commerce, specifically an automobile, to carry out a kidnapping resulting in death. In dismissing the indictment, the District Court held that an automobile is not an instrumentality of interstate commerce, and that even if it is, or even if it were, Congress doesn't have authority to restrict or regulate the intrastate uses of such instrumentalities. This Court reviews both of those legal conclusions de novo, and it should reverse. An automobile is a quintessential instrumentality of interstate commerce. The Supreme Court has held, and the defendants agree, that planes and trains are instrumentalities of interstate commerce, and there's no basis for differentiating automobiles. Indeed, as we pointed out in our brief, all the circuits to consider this issue, and there are seven, have all held that automobiles are instrumentalities. There have been some pretty good dissents, too, though. There have been dissents, yes, but the holdings of the majorities, obviously, were that automobiles are instrumentalities. And I would respectfully suggest that none of the reasons that were given by the District Court for rejecting that consensus view is persuasive. What I'd like to do is just take a few minutes and walk through the District Court's analysis to sort of highlight where we think the District Court went astray. The first reason that the District Court gave for its conclusion is that this Court's prior decision in Morgan somehow already held that automobiles are not instrumentalities of interstate commerce. I would point out that I don't read the defendants to even be defending that line of reasoning, but I want to be clear. This Court didn't address the issue because it wasn't presented. The facts of Morgan were an interstate kidnapping where a car, a cell phone, and a GPS were all used, but the indictment only charged the cell phone and the GPS. It didn't charge the automobile, so this Court never had occasion to pass on that question. And that's why, certainly, if it didn't pass on it, it certainly didn't decide that automobiles are not. So I think we can move Morgan to one side, and the District Court was simply wrong. It's kind of a notable omission, though. I mean, if you're talking about the internet, there's as many aspects of that that could be potentially flaws. It just seems like the Morgan Court, it seemed like, and of course, a car would be an instrumentality of interstate commerce. Right, and I think they could have said that. I think it would have been gratuitous because the indictment didn't charge it, so it would have been, I don't know, it would have been binding. That's why we have this case. Yes, exactly. So it keeps us all busy and occupied. Moving on past Morgan, the District Court next rejected the two principal cases that the government relied on, one from the Sixth Circuit and one from the Seventh. The Sixth Circuit decision, Wyndham, I'd like to address first. Wyndham was an intrastate kidnapping case, where the indictment charged and the defendant pleaded guilty to using both an automobile and a cell phone to perpetrate the kidnapping. What the District Court said here is, well, that's distinguishable because we don't have a cell phone here. We only have the car. That ruling, that's a distinction without a legal significance, Your Honors, for the very simple reason that the statute itself proscribes the use of any instrumentality singular. It doesn't require the government to prove multiple instrumentalities. Any instrumentality singular would be sufficient. I would also emphasize that there's nothing in the Wyndham opinion, if you read the opinion carefully, and I'm sure the Court will, there's nothing in the opinion that suggests that the result would have been different in that case if the defendant had not used the cell phone, that is, if it was based solely on an automobile. So again, we think the distinction the District Court gave for rejecting Wyndham is simply incorrect as a legal matter. The other case is, of course, the Seventh Circuit decision in Protho. Protho is on point with this case in the sense that the only instrumentality charged was an automobile. There's no dispute about that. The issue in Protho was that the defendant argued that the only way an automobile is an instrumentality is if it's used in interstate commerce. What the Seventh Circuit did is it issued two holdings. First, it said as a legal matter that they rejected Protho's argument that the instrumentality must be used in interstate commerce as a legal matter. They said cars as a category are instrumentalities of interstate commerce. But it went on to note that even if it accepted Protho's argument, it wouldn't have changed anything because in that case, the car was, in fact, used in interstate commerce. So that sort of the fact that the car happened to be used was sort of a gratuitous fact of that case. But the central holding of Protho is that automobiles as a class are instrumentalities. And the court affirmed the judgment where that was the only instrumentality that was used. Once again, the district court's effort to sort of dismiss Protho as sort of dicta or, you know, the fact that it required proof of an interstate connection is simply, we think, misguided. You know, it was striking to me in your brief that you really disavow any limiting principle here. And, you know, more or less, a car can have, the federal government has the plenary authority to regulate anything to do with a car, you know, presumably, you know, federal speed limits and seat belt requirements. And I mean, is that true? I mean, if it's a car, Congress can do anything. I would say this, Your Honor, that Congress is, when Congress regulates instrumentalities, it's exercising its category two authority, and it has broader authority to regulate the channels and the instrumentalities of commerce than it does to regulate activities that, in the aggregate, have a substantial effect. We're not taking a position on whether Congress can impose, you know, federal speed limits. This case doesn't present that question. What I would say, though, is that... Well, our opinion is going to open the door for that, won't it? Well, I don't think so. I think that all you have to do... How do we write an opinion that cabins Congress's plenary authority in this area? Well, first of all, the statute itself cabins the extent of the statute. Because the statute doesn't say any use of any instrumentality, no matter how incidental. The statute itself has a limiting principle, which is that the instrumentality has to be used to either commit or further the crime. So as we said in our brief, Your Honors, and I understand Your Honor was pointing out we don't have an affirmative limiting principle as to Congress's authority, but as to the statute itself. Any incidental use of a cell phone, if an abductor is holding their captive and they happen to get on their cell phone to check the weather because they want to drive their captive somewhere. I mean, any incidental use is not going to be sufficient. But here, what you're talking about is using an automobile is integral to the facilitation of the crime. Because the victim was abducted from the hotel and driven to a remote location 10 miles down the road. So there are... We're talking about motor vehicles, all correct. I'm sorry? It's a motor vehicle, is the... Motor vehicle, automobile, car. I think we're using those interchangeably. I'm just wondering, is a scooter a motor vehicle? Golf cart? We've had other cases, the carjacking statutes raise some of these things. Sure. Yeah, it's an interesting question. I think that a scooter probably would qualify as an instrumentality. Would or wouldn't? Would, it would. But a golf cart? Yeah, I think that they would because they're... Tractor? Yeah, I think that they would. If you're asking, I mean, I don't view those in the same category as automobiles. So again, if you want to define a category as a motor vehicle, let me say why I don't think that's really a concern. I'm not aware of a single case in either a federal case or even in a state case where someone has been abducted or kidnapped using a lime scooter or using a golf cart. That's just not the object of choice that kidnappers use. So I don't think you're ever going to have to confront that question. But if you're asking whether, as a statutory matter, a scooter or a golf cart would qualify as an instrumentality, I think it's a tougher case, but I think that they would. Isn't the problem... No, please. Isn't the problem, though, that we're not only addressing a statutory issue, but a constitutional issue? And in Article I, Section 8, it is a little troubling if we enunciate a precedent saying that a scooter or a bicycle or a tricycle or a tractor could be the subject of regulation, falls within Congress's domain. Is that a problem? It's a hypothetical problem that could come to exist. This statute has never... It's not a hypothetical problem when you're writing an opinion. No, I understand. You can say it's an instrumentality of commerce, and that opens the door to all this. And that's why Judge Timkovich was pressing you on limiting principles, because we... I understand. How do we write an opinion just for this statute? Well, I think you look at the decisions respectfully of your sister circuits that have all written opinions. They're not adopting sweeping rules that kind of extend beyond the facts of the case. And if the government were to choose to prosecute a kidnapping that involves a scooter or a go-kart or a golf cart, excuse me, then it would be litigated in that case whether the limits have been transcended. But I think for purposes of this case, you have seven circuits that have all looked at the issue and said, automobiles, whatever else you can say about other instrumentalities, automobiles are sort of the modern-day equivalent of planes and trains that everyone agrees are instrumentality. Well, just to be clear, I'm not talking about the carjacking statute. I'm not even talking about 1201. You're talking about Congress's. I'm just talking about the constitutional issue. Well, and I think part of the struggle, Judge Bacharach, is that the Supreme Court, when they have dealt and addressed the limits of Congress's authority, they've all been Category 3 cases. There really is no precedent from the Supreme Court or even this Court that has said that there are limits to how far Congress can go. So we are sort of treading into uncharted waters. And that's why I'm suggesting that a more restrained approach, which only focuses on automobiles, I think would put the Court on safer ground. I understand the concern that it opens it up. But the fact that there's never been a single prosecution that we're aware of involving a scooter or a golf cart suggests that it's not going to open the floodgates. The one other observation, and I realize I'm cutting into my own rebuttal time, but I think it's important to make, this court has had a decade, this circuit has had a decade of experience since Morgan. And of course, Morgan held that cell phones are instrumentalities of commerce, that Congress can regulate and proscribe their use in the commission of a crime. We haven't witnessed a torrent of federal kidnapping prosecutions or other prosecutions based on the use of cell phones. The government has not used this as leverage to kind of open the door and now start aggressively prosecuting these cases. And I would suggest that, given the ubiquity of automobiles, there are almost as many automobiles as there are cell phones, I don't think there's any reason to be concerned that a holdup would be made. I spot you that, but traditionally, this crime would have been a state murder, state kidnapping prosecution. And for whatever reason, the US attorney decided that it needed to prosecute this crime. So you say, well, it's never happened. The federal government has not traditionally prosecuted state-looking type crimes. And so there's a little cottage industry of carjacking and now kidnapping becoming federal prosecutions. So you say, well, they've never done it, but they're doing it now. They've never done it with scooters, was my point, just to be clear. But I understand your point. And I guess what I would say, and just to be clear, a motorcycle would clearly be covered by this. Yes.  I think, Your Honor, that the concern here is that, remember, we did have a statute on the books, a kidnapping statute, for 75 years that covered interstate kidnappings. The very fact that Congress chose to amend the statute in 2006 suggested that that wasn't effectual, that it wanted to expand the types of prosecutions. It wanted the federal government to be more proactive in this area. That's a policy choice for Congress to make. Congress is entitled to do that, consistent with its Category 2 authority. I know you want your rebuttal, but just one last question. Please. This vehicle, the crime, the kidnappers traveled on a United States highway. Right. But I don't think you really raise that as a factor. No, because the statute doesn't cover channels of commerce. It covers instrumentality. So we're not relying on the fact that they used the road. So it doesn't matter if the car travels on an interstate highway? Not for purposes of this statute, because, again, whether or not Congress can do that, you wouldn't even reach the constitutional question, because the statute is not implicated. Regardless of my rebuttal time, I'm more than happy to answer any of the court's questions.  Thank you, Your Honors. May it please the Court, Jake Rochebeau from the Federal Public Defender's Office for the aptly Mr. Chavarria, and I've agreed to reserve at least three minutes for Mr. Romero's counsel. I'd like to start by saying that the constitutional and statutory issues, the analysis, is the same here. Because when Congress used the term instrumentalities of interstate commerce in section 1201, it was clearly intending to incorporate that as a legal term of art. And it is a cardinal rule of statutory interpretation that when Congress uses a legal term of art, it intends it to have that meaning. So here, the scope of Commerce Clause authority is incorporated into the statute. So all these hypotheticals about what is the full scope of Congress's Commerce Clause authority under Category 2, the statute incorporates all of that. So these hypotheticals about whether a scooter could be used in furtherance of a kidnapping, these are all relevant questions, contrary to government sense. What's the test for determining whether something's a term of art? I'm not sure what the exact test is. I think it's pretty evident. Well, you're telling me that this is a specialty set of words, and how do I know that? Because courts routinely refer to the second category from Perez and Lopez as instrumentalities of interstate commerce. The statute added that language after Perez and Lopez. It's from 2006. The way the statute is written, it has five subsections, A1, 2, 3, 4, 5. All of those are expressed jurisdictional hooks. So A2 and A3 are about the territorial jurisdiction of the United States. A4 and 5 are about the kidnapping of foreign and federal officials. And A1 is where they use instrumentalities of interstate commerce. So clearly, Congress is intending to invoke the second category of the Lopez and Perez. How could Morgan, the cell phone, how can that case be correctly decided, given your position in this case? A car looks more like an instrumentality of interstate commerce than a cell phone. I disagree, Your Honor. A cell phone is, and to be fair, I would assume that we're talking about a cell phone that is actually operational and connected to, has some sort of cellular service, or connected to the internet. So if it's in airplane mode, does that make a difference? Honestly, potentially it could. I mean, if it does, I mean, actually, no. It wouldn't, because you look at the nature of the thing. And if it is a cell phone that's connected to the internet, then it is a, per se, instrumentality of interstate commerce. It doesn't matter in that moment, at the moment the kidnapper used it, that it was being used in interstate commerce at that precise moment. Why does the connectivity to the internet matter? Because that's, from the Supreme Court's case law, the most clear sort of scope of instrumentalities of interstate commerce is these interconnected networks and systems. So when the Supreme Court in Perez and Lopez has talked about Category 2, they cite as an example the Shreveport Railroad cases and another railroad case. And those cases specifically say interstate railway systems. They're not talking about purely interstate rail networks. But there are purely interstate rail lines, private rails that, I think, and you endorse airplanes and trains as instrumentalities. But both of those, like a car, can be used purely intrastate. Well, I've endorsed. Is the rail network and the fact that a plane can cross state boundaries, why is that different than a car traveling on an integrated, nationwide highway system? Well, so first, I wouldn't say that I've endorsed that literally all aircraft and literally all railroad. Well, I thought, if they're per se, it's totally all. So what I've said are the statutes. So for example, what the Supreme Court cites is Section 32, which is destruction of aircraft. They use that as an example of Congress regulating the instrumentalities of interstate commerce. And those only apply to commercial aircraft that are actually used, employed, or engaged in interstate commerce. And then similarly, the motor vehicle statute is motor vehicles that are actually involved in the carrying of passengers or cargo in interstate commerce. So those types, I have definitely conceded. If you use an Uber for a kidnapping, would that be in the statute? Yes. And I think probably even a vehicle that's used by Uber, even if it's not. So because Uber is- DoorDash delivery, that could be an instrumentality. Sorry? DoorDash vehicle could be an instrumentality of interstate commerce. Yes, Your Honor, because it's part of this interconnected system of interstate commerce. Let me ask you about, you said the cell phone, even if it were on airplane mode, would be an instrumentality of interstate commerce because it's connected all the time. What about a motor vehicle that has been driven on an interstate, on one of the interstate highways? Is that, once it's been used for that purpose, does it become an instrumentality of commerce so this would be covered? No, Your Honor, I wouldn't say that. I mean, I would say interstate- What's the distinction between that and why is it different that the car maybe isn't on an interstate highway or isn't driving on an interstate trip? And the cell phone that's on airplane mode, so it can't be used outside of the- So I think the cell phone on airplane mode is analogous and similar to an interstate railroad system or a railroad company. Just their intrastate, a rail car that's traveling intrastate on one of those interstate railroad companies' lines, those are still regulated by, can be regulated by Congress under section, under the second category because the interstate railway network itself is an instrumentality of interstate commerce. It doesn't matter the particular use of that, whether it was just intrastate. So a cell phone that has cell service and is connected to the internet is by its nature an instrumentality of interstate commerce. It doesn't matter that in the moment it wasn't connected to the internet. So you're saying that under 1201A, that it doesn't matter in response to Judge Hartz that the automobile had once been used in interstate commerce. It has to be used in interstate in order to perpetrate the kidnapping? I would say that, so I would draw a distinction between personal vehicles that are not generally employed or used in interstate, for commercial purposes, interstate commerce. Those are not just categorically- It's my vehicle, it's a personal vehicle. I use it to perpetrate a kidnapping. Is it, does it have to be used by me interstate in order to trigger 1201A? I'm not, I don't think it would reach that because here we're looking at whether the object is like by its nature an instrumentality of interstate commerce at all times. So I think you'd have to show that this, the motor vehicle used is a commercial motor vehicle, like it's a FedEx truck or it's an Uber. It is actually engaged in and generally employed in interstate commerce like those vehicles are. Generally. So, but then why do you tell Judge Hartz, as I understand it, that if it had been used interstate, let's say every day for a year, it travels between Colorado and Wyoming and then it's sold to me and I use it only in Oklahoma to perpetrate a kidnapping in Oklahoma. You're saying that it is not an instrumentality of interstate commerce because I am only using it in Oklahoma, but it has been used in the past by its nature. You said you looked at the nature of the thing. The nature of the thing is it's a vehicle that had generally been used in interstate commerce. Well, I think that by that point, that would be akin to say, you know, I think the nature of the object can change if its use has changed. So like an airplane that's grounded because it doesn't have an engine in it anymore, or a rail, a train that no longer operates. Or a plane that travels only between Philadelphia and Pittsburgh every day, a commuter plane. It's never gone outside of Pennsylvania. Is that an instrumentality of interstate commerce? If it's literally never gone outside of the state and it's employed only by some sort of private operator that also doesn't engage in interstate commerce or doesn't move people or cargo outside of the state and never has, then I could see an argument that that's not an instrumentality of interstate commerce. What we have though is a number of statutes. We've got one, one of the cases today where the hook for interstate commerce is that you used an object that had traveled in interstate commerce on one occasion. What do you accomplish? Congress could immediately change, amend this statute and say, if you use anything, not that was instrumentality of commerce, but that had traveled with interstate commerce, you'd get this case and a lot more too. There's a great opinion by Judge McConnell on the US versus patent, maybe you're familiar with that, which explained why that hook doesn't really fit any of the Supreme Court categories, but we said there's Supreme Court precedent that that hook works and it's used all the time. If you really accomplish anything by throwing out this statute, number one, and number two, knowing that they can do that, why would Congress have used the term instrumentality instead here? Because we look at the intent of Congress, why did they use instrumentalities of interstate commerce? Because they wanted it appropriately. They limited the statute only to instrumentalities of interstate commerce. It doesn't apply, they could have used broader language like a kidnapping in or affecting interstate commerce, which I realize we're running out of time, if I could just defer to counsel, if I could just quickly finish. When Congress intends to use the full scope of their Commerce Clause authority, they use the phrase in or affecting interstate commerce, and that is a signal to courts. The Supreme Court has said that this court has said that that's when they're trying to exercise the entirety of their Commerce Clause authority. When they use more narrow terms, they are not trying to do that. So here, Congress is trying to limit it to instrumentalities of interstate commerce and motor vehicles are not, per se, instrumentalities of interstate commerce. Thank you. And give counsel three minutes. It's not his fault, but he has a question. Morning, Your Honors. Kevin Del Valle on behalf of Mr. Romero. I want to address- He's got seven o'clock. Give him three minutes, please. Thank you. I want to address Wyndham. Wyndham was a guilty plea to a 1204-1 kidnapping. And later on, Wyndham filed a pro se motion saying that the factual basis of his plea agreement did not sustain his guilty plea. The Sixth affirmed, quote, "'Based on the District Court's acceptance "'of Wyndham's guilty plea.'" That was the issue there. And that's the first lines of the case. And at 1010 and 1011, the court states again, quote, "'In this case, neither party can test "'kidnapping took place intrastate.'" That was not even an issue in Wyndham. Romero and Chavarria do contest that. That's the issue. The court then found that the use of a cell phone and an automobile satisfied the 1201 interstate commerce class requirements. But they said cell phone and automobile. They didn't just say automobile. At 1013, the Wyndham court states, quote, "'Thus, the Seventh Circuit reasoning in Protho "'coheres with the Sixth Circuit precedent.'" Now, the Sixth Circuit is using Protho, but Protho was an actual interstate travel case. Protho used his vehicle to travel from Indiana to Illinois to rape a 10-year-old girl. The issue in Protho, as you read through the whole case, was really Protho's identity, who was the perpetrator. But on 828, Protho said, we look, as I think your co-counsel said, at the nature of the regulated objects class, your automobiles, rather than the particular use of one member of that class, the Ford Explorer that matters. So don't we look at the nature of an automobile as an instrumentality that is mobile, like airplanes, like railroads? Yes, but in that case, all that language, there was actual interstate commerce. There was actually from one state to the other. If I use the cell phone to call my bookie, I'm committing a crime. But if I throw it at my bookie's head and ding him with it, this is an instrumentality of interstate commerce. But how do I use it? If I hit my bookie on the head with it, is that a federal crime? And that's essentially what the government is asking you to do. Any crime that uses a car can now become a federal crime. Couple of kids driving up and stealing some beer off a federal highway into a rest stop have now committed a federal crime, and what does that do? That allows the government to do selective prosecution. That does not warn the general public of the nature of the statute. Well, we do know, don't we, because of 1201A1, that whatever Congress had in mind, it must have meant something other than the kidnapper traveling in interstate commerce, because that is separately identified as a predicate for guilt under 1201A1. So whatever Congress meant by an instrumentality of interstate commerce must have meant something in addition or other than the kidnapper actually going interstate in order to perpetrate the kidnapping, right? I agree, yes. They had to have, the first part of 1201, states crossing state lines. You have to transport somebody, even if they're dead. So what sense, then, would it make under your definition that we define instrumentality of interstate commerce to mean that in perpetrating this kidnapping, the automobile had to cross state lines? Because irrespective of that language, it's already gonna be separately a predicate for guilt under the other part of the disjunctive segment in 1201. Yeah, they do have to cross state lines. My position is, if you read the beginning part of 1201, it implies that state lines will be crossed when you transport the victim. There's language on the transporting of the victim across state lines. And then it says, or you use an instrumentality of interstate commerce. So that's my question. So doesn't the second part of the disjunctive, or using an instrumentality of interstate commerce, have to assume that this instrumentality is not being used to cross state lines? Correct, correct. Okay. Do you endorse your co-counsel's position that commercial vehicles would be subject to this kidnapping statute? No, no, I do not. So, as long as it's interstate. As long as it doesn't cross state lines. It doesn't meet, it doesn't meet the transporting interstate requirement. Thank you. Thank you so much. Two very brief points, if I may. And one of them, I struggled to find the answer, Judge Timkovich, to your question about term of art, because I left my glasses up here. So, it's a little hard to see, but I was able to figure it out. Pages 10 to 11 of our reply brief, we teased out the very question that your Honor asked about the meaning of a term of art. It's the Supreme Court, the fountainhead decision, of course, is Marsette. And the Supreme Court said, where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice. That's the definition of a term of art. More recently, and again, this is on page 11, there's several cases that are cited. The key, as the Supreme Court has said, is that the statutory term has to have a well-settled meaning of common law. And the best example I can give of that, your Honors, is this court's own decision in In Re Antrobus, which is cited in our brief. Antrobus was construing the meaning of the phrase, writ of mandamus, as used in the Crime Victims' Rights Act. And what this court said is, yeah, writ of mandamus is a term of art. It dates back to centuries old English common law. It has a well-accepted meaning and a well-understood meaning, and so we're going to treat it as a term of art. The situation we have here is different. Instrumentality is a term that the Supreme Court has used, but it doesn't have that fixed meaning. That's the problem. It doesn't, there are certain data points where we know certain things, planes and trains are instrumentalities, but it doesn't have a fixed meaning of common law. And that's why the term of art approach doesn't apply. The second point that I want to make just in my closing seconds is the suggestion about a commercial limitation on the statute. I would just say that that's engrafting something onto the statute that Congress didn't include. The statute says any instrumentality. Congress could have said any commercial instrumentality. It didn't say that. It said any, and as the court is well aware, any is a term of breadth. So the idea that we're going to sort of somehow limit it to a subclass, I think that just goes against the text of the statute. If the court has no further questions, I appreciate the court's time. We would ask the court to reverse the judgment of remand so this case can proceed to trial or guilty plea or some disposition. Thank you so much, Your Honor.